Filed Under Seal

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| v. | : | DATE FILED: _____ |
| KYLE MCLEMORE | : | VIOLATIONS:<br>18 U.S.C. § 1341 (mail fraud – 1 count)<br>18 U.S.C. § 641 (theft of public money – 2 counts)<br>Notice of forfeiture |

### INDICTMENT

### COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

### INTRODUCTION

1. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

2. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the PUA (Pandemic Unemployment Assistance) program, which provided unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

3. The PUA program was administered by the various states, including the Commonwealth of Pennsylvania, but its benefits were funded by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administered the

1

PUA program, on behalf of the United States Department of Labor, which was responsible for overseeing the PUA program.

4. PA DLI required that a PUA claim be made online via the PUA website, https://pua.benefits.uc.pa.gov. The applicant was required to enter personal identification information (PII), including name, date of birth, social security number, email address, telephone number, and a physical address. An applicant was also required to answer a series of questions that enabled the PA DLI to determine the applicant's eligibility and payment amount. Once awarded PUA benefits, the applicant was required to submit weekly certifications showing continuing eligibility. PA DLI required that the application for PUA benefits as well as the weekly certifications be made online.

5. While each state administered its own PUA program, the application used by each state was a standard online application form. The form consisted of 27 different sections including a range of questions within each section. Some of the questions asked for the applicant's PII and biographical information, while other questions dealt with the applicant's eligibility for the program and work history. An applicant was required to provide their current employment status and answer if they were able to accept a job if offered. If the applicant was unable to accept a job, the applicant was required to provide a reason for not being able to accept a job.

6. The applicant was also required to disclose if they were unemployed as a result of a pandemic or major disaster. If the applicant's employment had not been affected as a result of a pandemic or major disaster, the applicant was not eligible for PUA benefits. If the applicant's employment had been affected by a pandemic or major disaster, the application was

required to note in which state the applicant was affected by the pandemic or major disaster and the nature of the pandemic or major disaster.

7. In the 'self-certification' section of the application, the applicant was required to answer questions regarding the nature and impact of a pandemic or major disaster on the applicant's employment status. First, the applicant was required to disclose the pandemic or major disaster which affected the applicant's employment. An applicant was only eligible to receive weekly PUA benefits if the applicant was unemployed for reasons related to the COVID-19 pandemic. Second, the applicant was required to disclose the date of the applicant's last day of work. Finally, if the applicant quit their job due to COVID-19, the applicant was required to supply a reason for quitting.

8. As to all of these preceding questions, the applicant was required to "acknowledge that I understand that making the certification is under penalty of perjury and intentional misrepresentation in self-certifying that I may fall in one or more of these categories is fraud."

9. The applicant was also required to complete another certification, under penalty of perjury, that if offered a job, the applicant would be able to accept it. An applicant was required to read and understand the PUA Compensation Handbook, which stated that any earnings must be reported for each week a person works. The applicant was also required to certify once again as to the application that "all information is true and complete" and that if the applicant provided false information the applicant could be subject to criminal prosecution.

10. If PA DLI or another state's administrative agency approved an application

3

for PUA benefits, the applicant was then eligible to receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards were mailed via the United States Postal Service to the physical address that appeared on the application. When a state agency approved an applicant's eligibility, the agency established the applicant's period of benefits, amount of weekly benefit, and maximum total benefit amount. However, even after this occurred, the applicant was not able to receive the benefits unless the applicant performed the appropriate weekly certifications.

11. The recipient of PUA benefits received a unique applicant number that corresponded to the applicant's initial application and weekly certifications. Payments for PUA were based on a seven-day period, from Sunday through Saturday. Thus, the benefits recipient was required to certify every seven days that he or she: a) was ready, willing and able to work each day; b) was seeking full time employment; c) did not refuse any job offers or referrals; and d) had reported any employment during the week and the gross pay or other payments received. The weekly certification was required to be completed in a timely manner. A delay in the weekly certification could result in a delay or denial of further payments.

12. Until May 15, 2020, defendant KYLE MCLEMORE was incarcerated under the custody the Pennsylvania Department of Corrections. On May 15, 2020, defendant MCLEMORE was paroled and released from custody.

## THE SCHEME TO DEFRAUD

13. From in or about March 2020, to on or about February 27, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**KYLE MCLEMORE**

devised and intended to devise a scheme to defraud state and federal agencies, and to obtain money and property, specifically PUA benefits, by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

14. On May 21, 2020, defendant KYLE MCLEMORE submitted or caused to be submitted a PUA application in the state of Pennsylvania. On the application, defendant MCLEMORE falsely stated that he had lost his job due to the COVID-19 pandemic and that his last day of work was on March 27, 2020. These statements were false as defendant MCLEMORE was incarcerated on March 27, 2020, and as a result of his incarceration, did not lose his job due to the COVID-19 pandemic.

15. After he was approved for PUA benefits, defendant KYLE MCLEMORE submitted or caused to be submitted weekly certifications to the PUA website certifying that he was ready and able to accept a job if offered. On June 16, 2020, defendant MCLEMORE submitted or caused to be submitted numerous certifications falsely stating that from the period of March 28, 2020 to May 15, 2020, he was ready and able to accept a job if offered. These statements on the weekly certifications for this period were false as defendant MCLEMORE was incarcerated from March 28, 2020 to May 15, 2020 and would have not been able to accept a job.

16. Thereafter, from June 23, 2020 to September 5, 2020, defendant KYLE MCLEMORE performed weekly certifications which allowed him weekly benefits tied to his initial false application. As a result of his application and weekly certifications, defendant MCLEMORE obtained $14,555 in PUA benefits.

## THE MAILING

17. The benefits tied to defendant KYLE MCLEMORE's application and weekly certifications were loaded onto a US Bank debit card. This card was mailed to the address on the application, on E. Chelton Avenue, Philadelphia, Pennsylvania.

18. On or about May 26, 2020, in the Eastern District of Pennsylvania, and elsewhere, having devised and intending to devise this scheme described above, the defendant,

**KYLE MCLEMORE,**

for the purpose of executing the scheme, knowingly caused to be delivered by United States mail, according to the directions thereon, a US bank debit card mailed from Shoreview, Minnesota or Indianapolis, Indiana, addressed to Kyle McLemore at E. Chelton Avenue, Philadelphia, Pennsylvania.

In violation of Title 18, United States Code, Section 1341.

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this indictment:

### EIDL PROGRAM

1. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Pub. L. 116-136) became law and provided emergency assistance for individuals, families, and businesses affected by the coronavirus pandemic. The CARES Act provided funding for multiple programs to aid businesses affected by the pandemic, including the Economic Injury Disaster Loan (EIDL) program. The EIDL program provided low-rate emergency loan options for struggling businesses for amounts up to $500,000. This program is administered by the Small Business Administration (SBA). Applications for the EIDL program are made through an online SBA portal.

2. As part of the application process, an applicant must submit information about the applicant's business. This information includes, amongst other categories, the organization type of the business, gross revenues for the twelve months preceding January 31, 2020, cost of goods sold for the twelve months preceding January 31, 2020, and the number of employees working at the business.

3. An applicant who submits an application for the EIDL program must also certify that the owner has not been convicted of a felony committed during and in connection with a riot or civil disorder or other declared disaster, and that the owner is not presently subject to an indictment, criminal information, arraignment, or other criminal charges. An applicant must also certify that the owner within the last five years has not been convicted of a felony or placed on any

form of probation or parole.

    4.  As part of the EIDL application, an applicant can also request an emergency advance of $10,000. If an applicant qualifies for this program, the SBA will pay this emergency advance within three days of the applicant submitting the information. To receive this advance and the ultimate loan, the applicant must enter bank account information to identify the account to receive the deposit of the advance funds and the loan.

    5.  Before an applicant can submit the application, the applicant must certify, under the penalty of perjury under the laws of the United States, that the information on the application is true and correct.

    6.  In addition to submitting the application, before applicants can receive the final disbursement, the applicant must sign a Loan Authorization and Agreement (LA&A) with the SBA. This LA&A outlines for the applicant all applicable provisions of the loan including the loan amount and rate, repayment schedule, collateral and personal guaranty (if applicable), record keeping requirement, and permissible uses of the loan. The loan cannot be disbursed unless the applicant executes the LA&A. As part of the LA&A, the applicant must again certify that "all representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this loan."

    7.  As outlined in the LA&A as well as the initial application, the only permissible use of the loan is to "use all proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees."

## MCLEMORE'S FRAUDULENT LOAN

8.  On or about June 25, 2020, defendant KYLE MCLEMORE submitted an EIDL program application to the SBA. On the application, defendant MCLEMORE falsely stated that he owned a sole proprietorship that sold tobacco located on E. Chelton Avenue, Philadelphia, Pennsylvania, his residential address. Defendant MCLEMORE falsely stated that a) his business had eleven other employees; and b) that in the twelve months prior to the pandemic his business had $400,000 in sales and $150,000 in cost of goods sold. For the business's tax ID number, defendant MCLEMORE listed his social security number. Defendant MCLEMORE also falsely stated on the application that within the past five years he had not been on probation or parole, when in fact, he was on parole on June 25, 2020, having just been paroled on May 15, 2020. Defendant MCLEMORE opted on the application to be considered for an immediate $10,000 emergency advance. For deposit information, defendant MCLEMORE provided his Navy Credit Federal Union account ending in 0155. At the end of the application, under the penalty of perjury under the laws of the United States, defendant MCLEMORE certified that all of this information was true and correct.

9.  As a result of defendant KYLE MCLEMORE's false application, on or about June 29, 2020, the SBA deposited the $10,000 advance into his Navy Federal Credit Union account ending in 0155. Defendant MCLEMORE did not use any of the $10,000 advance for a proper business purpose under the loan as specified in the LA&A and on the application. Rather, defendant MCLEMORE spent the $10,000 by withdrawing large cash amounts at ATMs, transferring $1,500 to his sister, and making multiple debit card transactions.

10. After defendant KYLE MCLEMORE submitted his application and

received his emergency advance, defendant MCLEMORE's ultimate loan disbursement was put on hold due to a lack of a verification of his business. The SBA requested further verification of the existence of his business through a license or incorporation documents. On or about July 9, 2020, defendant MCLEMORE submitted a forged business license from the City of Philadelphia for verification. The SBA accepted this as verification, allowing defendant MCLEMORE's application to be approved and the loan to be disbursed to defendant MCLEMORE.

11. On or about July 13, 2020, the SBA deposited approximately $114,900 into defendant KYLE MCLEMORE's Navy Federal Credit Union account ending in 0155. The SBA was eventually able to reverse this deposit. However, before the SBA was able to do so, defendant MCLEMORE spent a portion of the loan proceeds on non-business purposes, including large cash withdrawals at ATMs in Philadelphia and Atlantic City, personal car payments, another transfer to his sister, and a $10,000 check to another person with whom defendant MCLEMORE discussed making fraudulent PUA and EIDL fraud schemes.

12. From on or about June 25, 2020, to on or about July 23, 2020, in the Eastern District of Pennsylvania, and elsewhere, defendant

**KYLE MCLEMORE**

did knowingly steal and convert to his use or the use of another, money or a thing of value of the United States, specifically, Economic Injury Disaster Loan (EIDL) funds under the care of the United States Small Business Administration, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1. The allegations in paragraphs 1 through 12 and 14 through 17 of Count One are incorporated herein.

2. From on or about May 21, 2020, to on or about February 27, 2021, in the Eastern District of Pennsylvania, and elsewhere, defendant

**KYLE MCLEMORE**

did knowingly steal and convert to his use or the use of another money or a thing of value of the United States, specifically, Pandemic Unemployment Assistance funds under the care of the United States Department of Labor, in a value exceeding $1,000.

In violation of Title 18, United States Code, Section 641.

11

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times relevant to this indictment:

1. As a result of the violations of Title 18, United States Code, Sections 641 and 1341 as set forth in this indictment, defendant

**KYLE MCLEMORE**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $24,555.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

A TRUE BILL:

_____
GRAND JURY FOREPERSON

_____
JENNIFER ARBITTIER WILLIAMS
ACTING UNITED STATES ATTORNEY

13

No. _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**
Eastern District of Pennsylvania
Criminal Division

**THE UNITED STATES OF AMERICA**
vs.
**KYLE MCLEMORE**

**INDICTMENT**
Counts

**18 U.S.C. § 1341 (mail fraud – 1 count)**
**18 U.S.C. § 641 (theft of public money – 2 counts)**

Notice of forfeiture

Filed in open court this _____ day,
Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____